IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Plaintiff, | ) | **ORDER ON MOTION TO SUPPRESS** |
| | ) | |
| vs. | ) | |
| | ) | Criminal Case No. 2:04-cr-55 |
| Alfonso Rodriguez, Jr., | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant's Motion to Suppress. Plaintiff filed a brief in opposition to one portion of the motion. The Court held a hearing on December 14, 2005 in which it took evidence and heard arguments from both parties. Based upon the foregoing, the Court issues the following opinion.

## SUMMARY OF HOLDING

Only after Ileanna Noyes informed the police that she would try to get Rodriguez to tell her Dru's location did the police allow Noyes to visit Rodriguez without his lawyer present. Law enforcement knew she was going to try and elicit incriminating information from Rodriguez, and an officer placed a tape recorder in the room to catch these statements. This behavior violates the government's affirmative obligation not to act in a way that circumvents the Sixth Amendment right to counsel.

## FACTS

On December 1, 2003 at approximately 7:00 p.m., Rodriguez was arrested. The police read him his Miranda rights, and Rodriguez refused to answer any questions. The following day, the Grand Forks County Attorney charged Rodriguez with kidnapping. A lawyer was appointed to

represent Rodriguez.

On the night of December 2, Rodriguez's sister, Ileanna Noyes, tried to visit her brother at the Tri-County Correctional Center in Polk County, but she was not allowed to see him because the jail did not permit visitation at that time of the day. On the morning of December 3, Noyes gave police permission to search her property. While officers were searching her property, Noyes spoke with Officer Senechal. Noyes stated that she "felt for" Dru Sjodin's family and hoped she could help find Dru. She stated that if she could talk to Rodriguez, she might be able to get him to tell her where Dru was. Noyes also stated that she had tried to visit Rodriguez the night before but that she had not been able to see him.

Following this conversation, Officer Senechal called the Polk County Sheriff's Department to see if a visit could be arranged for Noyes. The Sheriff's Department agreed to arrange a visit between Noyes and Rodriguez. Ordinarily the Correctional Center would not have allowed visitation at that time of the day.

Once Noyes arrived at the Sheriff's Office, she met with Deputy Malinowski. She reiterated to him that she wanted to help. The deputy informed her that he would place a tape recorder in the room where she was going to meet with Rodriguez and record their conversation. The recorder would be on top of a file cabinet with papers placed on top of it. Deputy Malinowski asked Noyes if she would tell Rodriguez that their conversation was being taped, and she said that she did not think she would.

After a court hearing where Rodriguez was represented by counsel, law enforcement brought him into the room where the recorder was running. Noyes talked to Rodriguez without his lawyer present. The police recorded the entire conversation.

## ANALYSIS

The Sixth Amendment right to counsel is triggered "at or after the time that judicial proceedings have been initiated . . . 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Fellers v. United States, 540 U.S. 519, 523 (2004) (quoting Brewer v. Williams, 430 U.S. 387, 398 (1977)). By the time Rodriguez met with his sister, an information had been filed against him, so his Sixth Amendment right to counsel had attached.

A defendant's Sixth Amendment right to counsel is violated when law enforcement "deliberately elicit" incriminating statements from him in the absence of his lawyer. Kuhlmann v. Wilson, 477 U.S. 436, 457 (1986). The government's agents, such as jailhouse informants, are also prohibited from deliberately eliciting incriminating information from suspects without counsel present. United States v. Henry, 447 U.S. 264, 274 (1980); see also Manning v. Bowersox, 310 F.3d 571, 575 (8th Cir. 2002) (stating that the government may not act indirectly through its agents to deliberately elicit incriminating information from suspects without counsel present). Since there is no allegation that Noyes is a member of law enforcement, Rodriguez's Sixth Amendment right can only be violated if she was acting as a government agent when she spoke with her brother.

In Manning, the FBI entered into an agreement with the girlfriend of a jailhouse informant; the jailhouse informant shared the same cell with the suspect. 310 F.3d at 575. Under the agreement, the girlfriend would attempt to elicit specific information from the suspect about a murder, and she would also record their conversations. Id. at 574. The suspect assumed he was talking with this woman to fabricate an alibi defense. Id. Since the government deliberately created a circumstance to elicit incriminating statements from the suspect, the court held that his Sixth Amendment right to counsel was violated. Id. at 576.

3

In this case, Noyes met with Rodriguez at a time when visitation was not allowed. It was only with the intervention of law enforcement that she was able to meet with her brother. The Polk County Sheriff's Department provided them with one of its conference rooms. All of this happened only after Noyes told law enforcement that she wanted to help, and she told them that she could get Rodriguez to tell her where Dru was. Noyes' purpose in talking with her brother was to elicit information about Dru's location, which would be incriminating information. Under these circumstances, law enforcement acted in a manner that circumvented the protection afforded by the right to counsel. Maine v. Moulton, 474 U.S. 159, 171 (1985).

The United States argues that there was no Sixth Amendment violation because Noyes spontaneously offered her assistance and because law enforcement did not coach her on how to get information out of Rodriguez. There is no constitutional relevance to who initiated the contact between law enforcement and the private citizen. In those cases where the court has determined that the private citizen was a government agent, there is no mention of who initiated the contact. See, e.g., Massiah v. United States, 377 U.S. 201, 202 (1964) (stating that the co-defendant "decided to cooperate" with law enforcement); Manning, 310 F.3d at 574 (stating only that the FBI and the private citizen met to go over what information she should try to get out of the suspect).

The Supreme Court has also stated that it is constitutionally irrelevant whether it is the suspect or the government agent who arranges the meeting where the incriminating statements are obtained. Moulton, 474 U.S. at 174-75. The government has an affirmative obligation not to violate a suspect's Sixth Amendment rights. Id. at 176. This reasoning applies equally to the circumstances under which a private citizen agrees to obtain incriminating statements for the government. It hardly matters who initiated the contact. Once the private citizen has agreed to help the government, law

4

enforcement may not act in a manner that facilitates the violation of a suspect's Sixth Amendment right. Id.

The United States' second argument is that there was no Sixth Amendment violation because law enforcement did not coach Noyes on how to obtain incriminating statements from her brother. This argument misconstrues the Eight Circuit's "government agent" test as laid out in Moore v. United States, 178 F.3d 994 (8th Cir. 1999).

"[A]n informant becomes a government agent for purposes of [the Sixth Amendment] only when the informant has been instructed by the police to get information about the particular defendant." Id. at 999 (quoting United States v. Birbal, 113 F.3d 342, 346 (2d Cir. 1997)). In Moore, the jailhouse informant had a general agreement to provide information about criminal activity. Id. The police did not direct the informant to get information specifically about the suspect Moore. Id. Therefore, the government did not violate the Sixth Amendment when the informant gathered information about Moore. Id. at 999-1000.

In this case, the United States cannot rely on the Moore rule because Noyes did not have a general agreement with law enforcement to report on any criminal activity she knew about or discovered. Law enforcement placed Noyes in a room with one suspect. Law enforcement knew that she was going to try and elicit Dru's location from Rodriguez. There is no requirement that law enforcement give their agents specific tips on how to elicit incriminating statements. All that is required is that the agent took some action, "beyond merely listening, that was designed deliberately to elicit incriminating statements." Kuhlmann, 477 U.S. at 459. In this case, Noyes went beyond merely listening by attempting to elicit incriminating statements.

In this case, law enforcement violated its affirmative duty not to circumvent the Sixth

5

Amendment. The police agreed to allow Noyes to speak with a suspect only after she said she would try and discover incriminating information. This violation of the Sixth Amendment requires the suppression of the conversation between Noyes and Rodriguez.

Defendant also seeks to suppress various conversations Rodriguez had with law enforcement after he was arrested. The United States has stated that it does not intend to use these conversations in its case in chief since Rodriguez did not make any incriminating statements. Therefore it would appear that these portions of Defendant's motion would be moot. However, the United States indicates that it does not oppose those portions of the motion to suppress, so the Court will grant it.

## DECISION

Defendant's Motion to Suppress is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 19th day of December, 2005.

*Ralph R. Erickson*
Ralph R. Erickson, District Judge
United States District Court