IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Case No. 2:04-cr-55 |
| vs. | ) | |
| | ) | |
| Alfonso Rodriguez, Jr., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON FIFTH ROUND OF PRETRIAL MOTIONS

The Court has before it several pretrial motions filed by Defendant.  Hearings were held on

December 14 and 15, 2005 and February 3, 2006,during which the Court took these motions under

advisement. The Court has carefully considered the briefs submitted by the parties along with the

arguments and statements of counsel at the hearing and now issues this memorandum opinion and

order.

## SUMMARY OF RULINGS

I.      Because <u>Shepard</u> is not a death penalty case and it dealt with judicial factfinding, it is not
applicable to this case, so the Court will allow the government to introduce a broader range
of information in support of the 18 U.S.C. § 3592(c)(4) aggravating factor.

II.     Because the doctrine of collateral estoppel bars the use of the Blue Earth County acquittal,
the government may not use it as evidence during trial.  Because the "additional serious acts
of violence" factor only becomes duplicative once the jury reaches its decision on the §
3592(c)(4) factor, the Court will resolve the issue through appropriate jury instructions.

III.    Because the only other available punishment for this crime is life imprisonment without the
possibility of parole, the government will be limited to presenting evidence relating to
Defendant's future dangerousness to prison employees and other inmates.

IV.     Because the Indictment tracks the language of the FDPA's statutory aggravating factors and
those factors are sufficient to uphold a sentence of death, Defendant's Motion to Dismiss is
**DENIED**.

1

V.      Because there is no requirement to inform the grand jury that it has under consideration a capital case, Defendant's Motion to Dismiss the Notice of Special Findings is **DENIED**.

VI.     Because there was no constitutional error during the grand jury proceedings regarding the 18 U.S.C. § 3592(c)(4) factor, Defendant's Motion to Strike is **DENIED**.

VII.    Because non-statutory aggravating factors do not increase the maximum penalty for a crime, Defendant's Motion to Strike the Non-Statutory Aggravating Factors is **DENIED**.

VIII.   Because Hispanics and African-Americans are not systematically excluded from the jury pool, Defendant's Motion to Dismiss or Motion to Stay Based on the Jury Selection Procedure is **DENIED**.

**MOTIONS**

**I.      Procedure for Proving and Submitting Prior Convictions to Jury**[1]

Defendant has moved to limit the category of evidence that the government may offer to prove that two of Rodriguez's former convictions involved the infliction of, or attempted infliction of, serious bodily injury.  Defendant argues that the government should be limited to those categories of evidence announced in Shepard v. United States, 125 S. Ct. 1254, 1263 (2005).

The Shepard case involved the application of the Armed Career Criminal Act (ACCA).  Id. at 1257.  As a matter of statutory interpretation, the Court had previously held that burglary was only a predicate violent felony under the ACCA if it consisted of the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."  Id. (quoting Taylor v. United States, 495 U.S. 575, 599 (1990)).  It was Congress' intent that the enhancement provisions of the ACCA be triggered by convictions that had certain specified elements.  Taylor, 495 U.S. at 588.  The ACCA would only apply if the defendant had commit certain crimes that had the potential

---

[1] On January 13, 2006, the government submitted additional evidence regarding Defendant's prior convictions for an *in camera* review.  Defendant filed a brief in opposition to the Court's consideration of this evidence in its resolution of this motion.  As is clear from the following discussion on this motion, the evidence the government submitted had no bearing on the Court's decision.

for violence.  Id.  The Court referred to this as the "categorical approach" to the designation of

predicate offenses.  Id.  Therefore, under the ACCA, a court is not concerned with whether the

previous conviction actually involved a violent act, it just has to determine whether the previous

conviction fits within an enumerated category of crimes that had the "potential" for violence.  Id.

It was this categorical approach to the ACCA that served as the first basis for the Court's

decision in Shepard.  125 S. Ct. at 1261.  This categorical approach has been rejected in the federal

death penalty context.  See, e.g., United States v. Higgs, 353 F.3d 281, 316 (4th Cir. 2003).  The

statutory aggravating factors talk about whether previous convictions  "involved" certain specified

behavior.  See id. (discussing the factor at 18 U.S.C. § 3592(c)(2), which requires a previous crime

"involving the use or attempted or threatened use of a firearm . . . .").  Specifically, in this case,

under 18 U.S.C. § 3592(c)(4) the previous convictions must be ones "involving the infliction of, or

attempted infliction of, serious bodily injury or death upon another person."  Given the difference

in language between the ACCA and the FDPA, a court is not looking at whether the elements of a

crime have the "potential" for serious bodily injury, instead the court must look at what actually

happened.  The use of the word involving "authorizes and likely requires the court to look past the

elements of the offense to the offense conduct."  Higgs, 353 F.3d at 316; see also United States v.

Chong, 98 F. Supp. 2d 1110, 1121 (D. Haw. 1999) (rejecting the categorical approach and

permitting the introduction of evidence about the defendant's prior convictions).

The other basis for the Shepard decision is the Jones-Apprendi interpretation of the right to

a jury.  Shepard, 125 S. Ct. at 1262.  Those cases held that "any fact other than a prior conviction

sufficient to raise the limit of the possible federal sentence must be found by a jury . . . ."  Id.  Since

the ACCA inquiry is done by the judge and not a jury, the Court was concerned about the possible

infringement of the defendant's jury rights if the scope of a judge's factfinding was unlimited.  Id. at 1263.  In the case at bar, the Court has already ruled that the jury will determine whether these previous convictions involved the infliction of, or attempted infliction of, serious bodily injury. (Order on Second Round of Pretrial Motions at 10-12).  Since the judge will not engage in the factfinding on this issue, there is no similar concern of the infringement of Defendant's right to a jury.  Shepard, 125 S. Ct. at 1263.

Neither of the bases for the limitation on the evidence that may be considered regarding prior convictions is applicable here.  Therefore, the Court will not limit the government to the types of evidence mentioned in Shepard.  Indeed, to limit the government in such a manner would be contrary to the FDPA provision that allows the government to "present any information relevant to an aggravating factor for which notice has been provided" and contrary to the Supreme Court's mandate to particularize capital sentencing proceedings.  Chong, 98 F. Supp. 2d at 1121.

Defendant argues that the Chong Court did limit the type of evidence the government could introduce regarding a prior conviction.  While this is true, to argue that it limited the evidence to the same extent as Shepard would be misconstruing the opinion.  The court stated that the information would be limited because it would "not permit either party to relitigate the merits underlying the convictions . . . ."  Chong, 98 F. Supp. 2d at 1121.  That same standard applies here.  The Court will not allow either party to introduce evidence regarding issues such as whether Rodriguez should have pled guilty or the relative strength of the prosecution's cases.  That type of evidence would amount to relitigation of the previous convictions.

The crucial issue regarding those prior convictions is whether they involved the infliction of, or attempted infliction of, serious bodily injury.  The government has indicated that they intend

to call the two victims to testify if this case proceeds to the eligibility phase.  Given the definition that will be applied to "serious bodily injury," this type of evidence would be directly probative on the issue.  The government would be allowed to have these two women testify unless the probative value of their testimony is "outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury."  18 U.S.C. § 3593(c).

Defendant argues that if the Court allows the government to present evidence regarding the facts of prior convictions, then he should be allowed to present evidence on Polk County conviction #6192.  However, the evidence that Defendant seeks to introduce is fundamentally different from the evidence the government must present in order to satisfy its burden under 18 U.S.C. § 3592(c)(4).  Defendant would like to collaterally attack the 6192 conviction.  This type of attack is precisely what <u>Chong</u> stated it would not allow.  98 F. Supp. 2d at 1121.  This Court will similarly limit both parties to evidence that is relevant to the aggravating factors.

## II.      Strike "Additional Serious Acts of Violence" Factor

In the government's Notice of Intent, it alleges the following non-statutory aggravating factor: "Participation in additional charged and uncharged serious acts of violence: The defendant participated in additional charged and uncharged serious acts of violence."  Defendant argues that the government should be prevented from presenting evidence on his prior acquitted conduct to support this factor.

Under the principal of collateral estoppel, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."  <u>Ashe v. Swenson</u>, 397 U.S. 436, 443 (1970).  This principal applies in criminal law through the Fifth Amendment's guarantee against double jeopardy.  <u>Id.</u> at 445.  Not

only does collateral estoppel prevent a future lawsuit, but it also prevents the use of prior acquitted conduct as an aggravating factor in a capital case.  Delap v. Dugger, 890 F.2d 285, 317 (11th Cir. 1989).

In this case, the prior acquitted conduct involves a state district court in Minnesota.  When a prior prosecution does not involve the same governmental entity, the initial collateral estoppel inquiry is whether both adjudicatory entities are arms of the same sovereign.  United States v. Kills Plenty, 466 F.2d 240, 243 (8th Cir. 1972).   However, this inquiry presupposes that both governmental entities had jurisdiction to try the same case.  See Heath v. Alabama, 474 U.S. 82, 88 (1985) (stating that the Double Jeopardy Clause is not violated when a defendant's single act violates the "peace and dignity" of two sovereigns by breaking the laws of each).  In Kills Plenty, the defendant was initially charged in tribal court with driving while under the influence of intoxicating liquor.  Id. at 241.  Following his acquittal on that charge, he was charged in federal court with involuntary manslaughter arising out of the same incident.  Id.  The federal court had jurisdiction because the defendant was an Indian who commit the offense in Indian country.  Id.

Rodriguez's acquittal in Blue Earth County was for criminal sexual assault and kidnapping. While the federal sovereign would have jurisdiction over a kidnapping where the victim was transported in interstate commerce, 18 U.S.C. § 1201(a), there is no allegation that this acquitted conduct involved the transportation of the alleged victim in interstate commerce.  Since the United States Attorney's Office would not have had jurisdiction over this offense, the first inquiry under the collateral estoppel doctrine is not relevant.

The second question is whether "a factual issue essential to the first verdict [was] an essential element of the second charge."  Kills Plenty, 466 F.2d at 243.  Defendant alleges that his defense

6

in the Blue Earth case was that he was not the person who commit the offense.  The government does not dispute this contention.  Necessarily then, the jury had to make a factual determination about whether Rodriguez was the perpetrator.  This same factual determination is an essential element for using the acquittal as evidence of an aggravating factor because the conduct must have been commit by Rodriguez otherwise it is not relevant.  Since a factual issue essential to the first verdict is an essential element to using it in this case, the doctrine of collateral estoppel bars the government from using the Blue Earth acquittal as evidence of an aggravating factor.  Delap, 890 F.2d at 317; see also United States v. Davis, 912 F. Supp. 938, 947 (E.D. La. 1996) (barring the use of acquitted criminal conduct as evidence for aggravating factors).

The government argues that this acquittal should be allowed in as evidence under the Double Jeopardy Clause exception that permits the introduction of a prior acquittal in a subsequent proceeding when that subsequent proceeding is governed by a lower standard of proof.  See Dowling v. United States, 493 U.S. 342, 349 (1990).  In a capital case, the government must prove the existence of an aggravating factor beyond a reasonable doubt.  18 U.S.C. § 3593(c).  However, the evidence used to support the aggravating factor does not have to be proved beyond a reasonable doubt.  United States v. Edelin, 134 F. Supp. 2d 59, 76 n.18 (D.D.C. 2001) (citing Huddleston v. United States, 485 U.S. 681, 682 (1988)).

In this case, the aggravating factor is "additional serious acts of violence."  Unlike a factor like "future dangerousness," which relies on making inferences from evidence to determine the existence of the aggravating factor, "additional serious acts of violence" is simply a direct reference to the evidence.  The jury must find that at least one of the acts used as evidence for this factor actually occurred in order to determine that this factor exists beyond a reasonable doubt.  For all

practical purposes then, the conduct and the aggravating factor are one in the same.  This requires proving the conduct beyond a reasonable doubt.  Since the evidentiary standards are the same between this proceeding and the prior jury trial, the government may not rely on the different standards of proof exception to the Double Jeopardy Clause.

Defendant next argues that the government should not be permitted to offer as evidence Rodriguez's prior convictions under this factor because they are already being used under the "prior convictions involving serious bodily injury," 18 U.S.C. § 3592(c)(4), factor.  An aggravating factor that duplicates another aggravating factor must be struck from the Notice of Intent.  Medlock v. Ward, 200 F.3d 1314, 1319 (10th Cir. 2000).  An aggravating factor impermissibly duplicates another when one aggravating circumstance must "necessarily subsume" another.  Id. (quoting Cooks v. Ward, 165 F.3d 1283, 1289 (10th Cir. 1998)).

The key to this aggravating factor is that it alleges "additional" acts of violence.  If the jury finds the existence of the 18 U.S.C. § 3592(c)(4) factor, then there aren't any "additional" acts to those presented to support the § 3592(c)(4) factor.  Under that circumstance, the "additional serious acts of violence" factor would necessarily be subsumed by the § 3592(c)(4) factor.  However, this conclusion relies on the jury finding the existence of the § 3592(c)(4) factor.  If the jury didn't find the existence of that factor, then the "additional serious acts of violence" factor would not be necessarily subsumed by another factor.  Therefore, if this case reaches the selection phase of trial, the Court will instruct the jury to not consider the "additional serious acts of violence" factor if it finds the § 3592(c)(4) factor.

### III.     Strike Particular Evidence in Support of "Future Dangerousness" Factor

Defendant has been charged with a violation of 18 U.S.C. § 1201.  Since the death of a person resulted from this crime, the only available punishments are death or life imprisonment. Defendant argues that since the federal system does not have parole, the government should be limited to presenting evidence of Rodriguez's future dangerousness as it applies to life in prison.

When the only alternate punishment to death is life imprisonment without the possibility of parole, the district court must instruct the jury that there is no possibility of parole when it deliberates on the future dangerousness factor.  Simmons v. South Carolina, 512 U.S. 154, 171 (1994); United States v. Allen, 247 F.3d 741, 788 (8th Cir. 2001).  Relying on Simmons, district courts appear to have uniformly held that the government is limited to presenting evidence on future dangerousness in the context of life imprisonment.  United States v. Plaza, 179 F. Supp. 2d 464, 488 (E.D. Pa. 2001); United States v. Cooper, 91 F. Supp. 2d 90, 111-12 (D.D.C. 2000); United States v. Peoples, 74 F. Supp. 2d 930, 931 (W.D. Mo. 1999).

The government argues that it should be allowed to present evidence of Rodriguez's dangerousness to society in general because there is "still a chance that the defendant might escape from prison or receive a pardon or commutation of sentence."  (Resp. United States to Def. Mot. Strike Certain Evid. Future Dangerousness at 2 (quoting Allen, 247 F.3d at 788)).  The Court cannot recall any recent escapes from a maximum security federal prison, and, given Rodriguez's criminal history, it is inconceivable that anyone would pardon or commute his sentence.  The threat that he may escape, be pardoned, or have his sentence commuted is simply illusory.  See United States v. Gilbert, 120 F. Supp. 2d 147, 154-55 (D. Mass. 2000) (stating that the idea that the defendant would be able to trick anyone in a maximum security prison into giving her medications, based on her

history of poisoning people, was illusory).  Therefore, the government will be limited to presenting evidence relating to Defendant's future dangerousness in the context of life imprisonment.

### IV.    Dismiss Indictment for Facial Insufficiency

Defendant argues that the Indictment does not fairly inform him of the charges against him. Specifically he finds fault with the mens rea factors, the "heinous, cruel, and depraved" factor, and the "substantial planning and premeditation" factor.

"An indictment is sufficient if it apprises the defendant of the elements of the offenses charged, and enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense."  United States v. Henderson, 416 F.3d 686, 692 (8th Cir. 2005) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)).  There is no requirement that an indictment use specific words, so long as by fair implication it alleges the charged offense.  Id. at 693.  Generally an indictment is sufficient unless it is "so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant" is eventually convicted.  United States v. Hernandez, 299 F.3d 984, 992 (8th Cir. 2002) (quoting United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir. 1993)).

In this case, Defendant is only challenging particular factors that make him eligible for the death penalty, so the inquiry is whether those factors are so defective that they would not support an eventual sentence of death.  Id. (quoting Fleming, 8 F.3d at 1265).  The Notice of Special Findings portion of the Indictment tracks the language of the FDPA with respect to the mens rea factors, the "heinous, cruel, and depraved" factor, and the "substantial planning and premeditation" factor.  The courts have held that these factors are sufficient to uphold a sentence of death.  See, e.g., United States v. Paul, 217 F.3d 989, 996-997 (8th Cir. 2000) (upholding the jury's sentence of death

decision that relied upon the mens rea factors); United States v. Sampson, 332 F. Supp. 2d 325, 333-34 (D. Mass 2004) (upholding the jury's sentence of death decision that relied upon the "heinous, cruel, and depraved" factor and the "substantial planning and premeditation" factor).  Since the factors in the Notice of Special Findings track the language of the statute, and those factors have been sufficient to support a sentence of death, this Indictment is facially sufficient.

## V.    Bar Death Penalty Based on Prejudicial Misconduct Before Grand Jury

Defendant seeks to bar the application of the death penalty in this case.  He alleges that the law requires the prosecutor to inform the grand jury that the mens rea factors and the statutory aggravating factors "are actually elements of a separate legal offense from the underlying crime." (Mem. Supp. Mot. Dism. Notice Special Findings at 3.)  Further Defendant alleges that a prosecutor must inform a grand jury that by making these special findings it will be charging someone with a capital offense.  Defendant cites no cases to support these propositions.

In a capital case, the Fifth Amendment requires the prosecutor to submit at least one statutory aggravating factor and the mens rea requirement to the grand jury.  United States v. Allen, 406 F.3d 940, 943 (8th Cir. 2005).  In order for a defendant to be eligible for the death penalty, the grand jury must then find at least one statutory aggravating factor and the mens rea requirement so that they can be charged in the indictment.  Id.  That is all that is required and neither the Supreme Court nor the Eighth Circuit have required more.

Defendant reads too much into the court's choice of words in United States v. Sampson, 245 F. Supp. 2d 327, 333 (D. Mass. 2003).  When describing the grand jury's process of finding at least one statutory aggravating factor and the mens rea requirement, the Sampson court described it as "a grand jury [agreeing] with the Department of Justice that it is permissible and appropriate that

a defendant be exposed to the death penalty . . . ."  Id.  That language does not expand a defendant's Fifth Amendment rights to require a prosecutor to inform the grand jury that they are considering a capital case.  The court was merely explaining that the grand jury must agree with the Department of Justice that there is sufficient evidence to support the necessary elements of a capital case.  Since Defendant's argument is unsupported by case law, this motion is denied.

In the alternative, even assuming the prosecutor had to inform the grand jury that it had under consideration a capital case, this motion would be denied.  The Court has reviewed *in camera* the pertinent portion of the grand jury transcript, and the United States Attorney did inform the grand jury that it was considering a capital case.

## VI.    Strike 18 U.S.C. § 3592(c)(4) Based on Prejudicial Misconduct Before Grand Jury

Under 18 U.S.C. § 3592(c)(4), the defendant must have been convicted of two prior offenses involving the infliction of, or attempted infliction of, serious bodily injury upon another person.  To prove this factor, the United States Attorney presented evidence that Rodriguez had been convicted of aggravated rape, attempted aggravated rape, and kidnapping and assault.  Defendant argues that the government engaged in misconduct by failing to inform the grand jury that aggravated rape and attempted aggravated rape, without more information, do not involve the infliction of, or attempted infliction of, serious bodily injury upon another person.

There is a strong presumption of regularity in grand jury proceedings.  United States v. Exson, 328 F.3d 456, 459 (8th Cir. 2003).  A party challenging grand jury proceedings has a heavy burden to overcome this presumption when seeking to strike a portion of the indictment.  Id. Only when an error of constitutional proportions occurs during the proceedings may the court dismiss an indictment.  Bank of Nova Scotia v. United States, 487 U.S. 250, 258 (1988).  An error of

constitutional proportions exists when people are excluded from serving on the grand jury on the basis of race or gender. Id. at 257. There is no constitutional requirement that the prosecutor give the grand jury legal instructions. United States v. Zangger, 848 F.2d 923, 925 (8th Cir. 1988).

One way to view Defendant's argument is as an assertion that the grand jury should have been informed of the holding in United States v. Rivera, 83 F.3d 542 (1st Cir. 1996). Looking at the issue from that perspective, Defendant's contention fails because there is no requirement that the prosecutor give the grand jury legal instructions. Zangger, 848 F.2d at 925.

The other way to view this argument is as an assertion that the grand jury should have never been informed of the prior convictions for aggravated rape or attempted aggravated rape because the prosecutor should have known that, standing alone, the convictions do not meet the requirements of 18 U.S.C. § 3592(c)(4). It is important to note at the outset that Rivera is not binding authority upon this Court, as it is not a ruling from the Supreme Court or the Eighth Circuit. Second, the Rivera case was not even interpreting 18 U.S.C. § 3592(c)(4). Therefore, it is highly doubtful that the United States Attorney would even have viewed Rivera as having any relevance at the time this case was presented to the grand jury.

In addition, given the case law in the Eighth Circuit, the United States Attorney could have rationally concluded that aggravated rape and attempted aggravated rape were crimes that involved the infliction of, or attempted infliction of, serious bodily injury. The Eighth Circuit has approved the following jury instruction with respect to the definition of serious bodily injury: "'[s]erious bodily injury' means something more than slight bodily injury. It means bodily injury of a grave and serious nature. It does not require a high probability of death." United States v. Demery, 980 F.2d 1187, 1190 (8th Cir. 1992). Under the Sentencing Guidelines, serious bodily injury includes

the mental impairment resulting from a rape.  United States v. Guy, 282 F.3d 991, 994 (8th Cir. 2002).  Given the intense mental trauma any victim undergoes as the result of a rape, one could rationally argue that the Eighth Circuit would find that aggravated rape and attempted aggravated rape involve the infliction of, or attempted infliction of, serious bodily injury.

Despite these indications from the Eighth Circuit, out of an abundance of caution, this Court chose to both apply the definition of serious bodily injury from 18 U.S.C. § 1365(g)(3) and to follow Rivera.  There is no constitutional error in the government's inability to foresee how this Court would rule.  Since there was no constitutional error in the grand jury proceedings regarding this factor, it will not be dismissed.

### VII.    Strike Non Statutory Aggravating Factors

Defendant argues that the non-statutory aggravating factors must be struck from the Notice of Intent because they were not presented to the grand jury.  Under the Fifth and Sixth Amendments, any fact, other than prior conviction, that increases the maximum penalty for a crime must be charged in an indictment.  Allen, 406 F.3d at 942-43 (quoting Jones v. United States, 526 U.S. 227, 243 n.6 (1999)).  The two factors that increase the maximum penalty for a crime under the FDPA are the requisite mens rea factor and at least one statutory aggravating factor.  United States v. Purkey, 428 F.3d 738, 749 (8th Cir. 2005).  Non-statutory aggravating factors do not increase the maximum penalty for a crime.  Id.  Therefore, the government did not have to include the non-statutory aggravating factors in the indictment.

## VIII.   Jury Panel Selection Procedure

Defendant argues that the District of North Dakota's jury-selection plan violates his Sixth Amendment right to be tried by a jury made up of a fair cross-section of the community.  To establish a prima facie violation of this Sixth Amendment right, Defendant must demonstrate "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."  Duren v. Missouri, 439 U.S. 356, 364 (1979).

For the first prong, Defendant has selected Hispanics and African-Americans.  Since there is no dispute that either of these groups represent a "distinctive" group in the community, the first prong is satisfied.

For the second prong, Defendant has provided census statistics that indicate that Hispanics comprise 0.8% of the population in the counties of the Southeastern Division of North Dakota, but only 33% of Hispanics voted in all of North Dakota in the last election.  Applying this state-wide percentage to the counties of the Southeastern Division, Hispanics would constitute approximately 0.3% of the possible jury pool compared to constituting approximately 0.8% of the general population.

As to African-Americans, Defendant again provides census statistics indicating that they comprise approximately 0.5% of the population in the counties of the Southeastern Division of North Dakota.  Only 33% of African-Americans in all of North Dakota voted in the last election. Again applying this state-wide percentage to the counties of the Southeastern Division, African-

Americans would constitute approximately 0.2% of the possible jury pool compared to constituting approximately 0.5% of the general population.

In <u>Duren</u>, the Court found that a 72% discrepancy between the percentage of women in the general population versus the percentage of women in the jury venire was sufficient to satisfy this prong of the analysis.  <u>See</u> 439 U.S. at 365-66 (stating that the difference between 53% of women in the general population and 15% of women in the jury venire was a "gross discrepancy").  In this case there would be a 63% discrepancy for Hispanics and a 60% discrepancy for African-Americans.  Assuming the accuracy of Defendant's numbers, while the discrepancy is not as high as it was in <u>Duren</u>, it is likely that these statistics would satisfy the second prong of the analysis.  However, the government does not stipulate to the accuracy of these numbers.  The Court need not resolve this dispute because Defendant has failed to establish the third prong of this Sixth Amendment inquiry.

For the third prong, Defendant must demonstrate that the underrepresentation is due to systematic exclusion of the group in the jury-selection process.  <u>Duren</u>, 439 U.S. at 364.  "The mere fact that one identifiable group of individuals votes in a lower proportion than the rest of the population does not make a jury selection system illegal or unconstitutional."  <u>United States v. Clifford</u>, 640 F.2d 150, 156 (8th Cir. 1981).

In <u>Duren</u>, the jury questionnaire allowed women to be excused from service simply if they requested to be excused.  439 U.S. at 361.  Men did not have the same option.  In addition, if women did not return their jury summons, they were treated as if they requested to be excused if they did not appear for jury service on the appointed day.  <u>Id.</u> at 362.  Men also did not have this same option.  Under these circumstances, the Court held that the underrepresentation of women in the jury venire was due to their systematic exclusion in the jury-selection process.  <u>Id.</u> at 366-67.

In this case, Defendant has failed to produce any evidence of systematic exclusion. Instead, he simply cites back to his statistical data from the second prong, thereby conflating the second and third prongs, which would render the third prong meaningless. Under Defendant's reasoning, all one would have to show to allege a Sixth Amendment violation is a significant underrepresentation in the jury venire. However, the Supreme Court and the Eighth Circuit require more. Id.; United States v. Morin, 338 F.3d 838, 844 (8th Cir. 2003).

Since North Dakota uses voting lists for jury selection, Defendant must show that Hispanics or African-Americans face obstacles to voting in presidential elections. Morin, 338 F.3d at 844. Defendant has not offered any evidence that they face obstacles to voting. Since Defendant has failed to establish that Hispanics or African-Americans are systematically excluded from jury pools in the District of North Dakota, the use of voter lists for jury selection does not violate the Sixth Amendment. United States v. Greatwalker, 356 F.3d 908, 911 (8th Cir. 2004); Morin, 338 F.3d at 844.

## DECISION

Defendant's Motion to Limit Evidence on the 18 U.S.C. § 3592(c)(4) factor to Shepard standards is **DENIED**. Defendant's Motion to Strike the "Additional Serious Acts of Violence" Factor is **DENIED** at this time. Defendant's Motion to Limit the Scope of Evidence for the "Future Dangerousness" Factor is **GRANTED** as explained above. Defendant's Motion to Dismiss the Indictment is **DENIED**. Defendant's Motion to Dismiss the Notice of Special Findings is **DENIED**. Defendant's Motion to Strike 18 U.S.C. § 3592(c)(4) Aggravating Factor in Light of Prejudicial Misconduct before the Grand Jury is **DENIED**. Defendant's Motion to Strike the Non-Statutory Aggravating Factors is **DENIED**. Defendant's Motion to Dismiss or Motion to Stay Based on the

17

Jury Selection Procedure is **DENIED**.

      **IT IS SO ORDERED**.

      Dated this 28th day of February, 2006.



Ralph R. Erickson, District Judge
United States District Court