IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Plaintiff, | ) | **ORDER DENYING SECOND AND** |
| | ) | **THIRD MOTIONS TO SUPPRESS** |
| vs. | ) | |
| | ) | |
| Alfonso Rodriguez, Jr., | ) | Criminal Case No. 2:04-cr-55 |
| | ) | |
| Defendant. | ) | |

Before the Court are Defendant's Second and Third Motions to Suppress. The government filed a brief in opposition. The parties stipulated that a hearing was unnecessary.

Defendant alleges that the search warrant for his automobile and the house he was living in lacked probable cause and lacked sufficient particularity. Defendant also alleges that the search warrant of his person lacked probable cause.

**I. Probable Cause**

A search warrant is supported by probable cause when the affidavit in support of the warrant demonstrates "a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Tyler, 238 F.3d 1036, 1038 (8th Cir. 2001) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). A court must took at the totality of the circumstances when deciding whether probable cause exists. United States v. Caswell, 436 F.3d 894, 897 (8th Cir. 2006) (quoting Gates, 462 U.S. at 238). Since the affidavits are normally drafted by nonlawyers, they are not held to technical requirements of elaborate specificity. United States v. Sumpter, 669 F.2d 1215, 1218 (8th Cir. 1982) (quoting United States v. Ventresca, 380 U.S. 102, 103 (1965)). The affidavit may not be viewed in a piecemeal fashion; instead, the court must look at the affidavit as a whole to decide

1

whether probable cause exists. United States v. Ryan, 293 F.3d 1059, 1062 (8th Cir. 2002) (quoting Gates, 462 U.S. at 243 n.13).

Probable cause is a "fluid concept," meaning the court should read the affidavit and apply common sense to the facts. Caswell, 436 F.3d at 897. Probable cause does not require a prima facie showing of criminal activity, and the affidavit does not have to state with particularity the criminal activity suspected. United States v. Horn, 187 F.3d 781, 787 (8th Cir. 1999). Finally, a reviewing court must accord great deference to the magistrate's determination that there was probable cause for the search warrant. United States v. Leon, 468 U.S. 897, 914 (1984).

The affidavits for the search warrants in this case contained the following relevant information:

On November 22, 2003, Dru Sjodin was working at the Victoria's Secret store in the Columbia Mall in Grand Forks until 4:00 p.m. She then shopped at the mall for about an hour, and left the Marshall Field's store at approximately 4:58 p.m. Dru placed a cell phone call to her boyfriend at approximately 5:00p.m. and talked to him for approximately four minutes. The phone call ended abruptly with Dru saying something to the effect of "O.K., O.K." Her boyfriend then repeatedly attempted to get a hold of her by phone, but she never answered.

At 9:00 p.m., Dru was scheduled to work at the El Roco Lounge, and she never showed up. At that point, her boyfriend and Dru's roommate decided to report to the UND Police Department that she was missing. By the time the affidavit for the search warrants was prepared, over four days had passed since Dru had placed that phone call to her boyfriend, and no friends or family had heard from her. Her friends and family stated that it was out of character for her not to be in contact with them for such a long span of time.

The police located Dru's car in the Columbia Mall parking lot. The passenger door was unlocked, and the officer found a black nylon sheath bearing the words "Tool Shop" on the ground behind her car.

On November 25, the police found one of Dru's shoes under the Highway 75 Bypass bridge in Crookston, Minnesota. At that time, the defendant was living in Crookston. On the same day that Dru was reported missing, the defendant went to the Columbia Mall in Grand Forks in the late afternoon. He arrived back in Crookston at 8:30 p.m. Rodriguez told police that he watched "Once Upon a Time in Mexico" from approximately 4:30 p.m. to 7:30 p.m. at a theater near Columbia Mall on the day Dru disappeared. However this alibi did not check out because "One Upon a Time in Mexico" was not playing in Grand Forks theaters on that day. Rodriguez could not explain this inconsistency.

Rodriguez's criminal history was also included in the affidavit and a copy of the criminal complaint for one of the incidents was attached to the affidavit. His criminal history includes two charges of kidnapping, a charge of attempted kidnapping, a charge of false imprisonment, and sexual and physical assault charges. All of his victims were women, and the affidavit asserted that the victims were strangers to Rodriguez. In one case, Rodriguez used a knife to threaten his victim, and in another case, he stabbed his victim with a knife.

The police learned that a "Tool Shop" sheath, like the one found by Dru's car, is only sold with a black, folding, lockblade knife. The first time the police spoke with Rodriguez, he consented to a search of his car. The police discovered a black, folding, lockblade knife in the trunk, but it was not in a "Tool Shop" sheath. Later, the police purchased one of these "Tool Shop" knives and noticed that it was very similar to the one found in the trunk of Rodriguez's car.

Applying common sense to this set of facts, and deriving the necessary inferences from them, the Court finds that there is probable cause to support these search warrants. When Dru's phone call was abruptly cut short; her friends and family did not hear from her for days, which was not like her; her car was found in the Columbia Mall parking lot with a knife sheath on the ground by it; and her shoe turns up by a bridge a few days later, there are sufficient facts to conclude that a crime may have occurred.

At the same time Dru disappeared, Rodriguez was at the same mall. This is a man with a history of kidnapping and sexually assaulting women that he does not know. In two instances, he used a knife on his victims. The police found a knife sheath on the ground by Dru's car. Rodriguez lied to the police about his whereabouts at the time Dru went missing. One of Dru's shoes was found in the city where Rodriguez lives. These facts demonstrate a fair probability that Rodriguez was responsible for Dru's disappearance.

Defendant argues that Rodriguez's criminal history is so old that it should not be considered in determining probable cause. "It is axiomatic that probable cause must exist at the time of the search and not merely at some earlier time." United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005). There is no definite time period after which information becomes stale. Tyler, 238 F.3d at 1039 (quoting United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993)). The timeliness of the information in the affidavit depends on the totality of the circumstances, "including the nature of the crime under investigation and the property sought in the search." Kennedy, 427 F.3d at 1141. The focus of this timeliness inquiry is on whether evidence of a particular crime will be found in a particular location. Id.

In this case, the suspected crime took place on the evening of November 22. Less than five

days later, at 2:20 a.m. on November 27, the police applied for the search warrants. Given this short span of time, there was a fair probability that evidence of the crime could still be found on Rodriguez, in his car, or in his home.

The drug case cited by Defendant relates to using an uncorroborated statement from a confidential informant and a prior drug conviction as the basis for obtaining a search warrant three years after the conviction. State v. Lee, 624 A.2d 492, 495 (Md. 1993). In this case, there is suspected criminal activity only days before the warrant is issued, the target of the investigation has engaged in similar behavior in the past, Rodriguez was at the same mall as Dru at the same time, and his alibi did not hold up under scrutiny. There is much more information in this case to sustain probable cause than there was in Lee.

Even if Rodriguez's criminal history was subject to a timeliness inquiry, the affidavit for the warrant also included information on where he had been for the previous twenty years. After his most recent conviction in the 80's, he was in prison. He was released approximately six months before Dru's disappearance. Therefore, his criminal history is recent because he was unable to commit any new crimes of this nature for the past twenty years.

Defendant next argues that the magistrate could not rely on Rodriguez's prior charges, that he was not convicted of, to make a probable cause determination. The prosecutor has broad discretion in deciding whether to dismiss criminal charges. United States v. Martin, 287 F.3d 609, 623 (7th Cir. 2002). When reaching a plea agreement with a defendant, the prosecutor will often dismiss charges. This does not prevent a magistrate from looking at the specific facts underlying the previous convictions. The facts regarding the two 1974 incidents involved abduction and one of the charges the jury convicted him of for the 1980 incident was attempted kidnapping. Therefore,

5

the affidavit, along with the materials attached to the affidavit, contained sufficient information on Rodriguez's history of abducting women.

Finally, Defendant argues that the affidavit did not establish that evidence would be found in the places described or on Rodriguez. As for the car, Rodriguez used it, and he admitted that he drove it to Grand Forks on the day Dru disappeared. Since Dru's car was found in the mall parking lot, it was likely that Rodriguez used his own car to transport her. The police had already found one piece of likely evidence, the knife, in the car. Based on this information, there was a fair probability that more evidence could be found in the car.

As for the house, it was where Rodriguez was living at the time. The police had already found one of Dru's shoes in Crookston; it was possible that more of her clothing or personal effects would be found in the house. Based on the affidavit, there was a fair probability that evidence could be found in the house.

As for the warrant for the search of Rodriguez's person, an abduction would require physical contact with the victim. In addition, he had a history of sexually assaulting his victims. These acts could leave trace amounts of evidence of the victim on his person or clothing. Therefore, there was a fair probability that evidence could be found on Rodriguez. The warrants are supported by probable cause.

**II. Particularity**

The Fourth Amendment requires a search warrant to particularly describe the place to be searched and the persons or things to be seized. Horn, 187 F.3d at 787. This particularity requirement is satisfied if the warrant is sufficiently definite to allow the police to identify the property to be seized. Tyler, 238 F.3d at 1039. "The degree of specificity required will depend on

the circumstances of the case and on the type of items involved. A warrant naming only a generic class of items may suffice if the individual goods to be seized cannot be more precisely identified at the time that the warrant is issued." Horn, 187 F.3d at 788.

Defendant objects to virtually all the categories of evidence mentioned in the warrant. First he objects to the search for items of clothing with blood, semen, bodily fluids, hair, and/or fibers. Given Rodriguez's history of sexually assaulting the women he abducted, and the apparent presence of a knife here, there was a fair probability that the police would find either his or her clothing containing this type of evidence.

Defendant also objects to various categories of evidence relating to items owned by Dru including notes, writings, photographs or other documents relating to her; a key chain with a key and auto entry pad for automobile; and cell phone or cell phone parts. Since Dru had some personal effects on her at the time she disappeared, there was a fair probability that if she was abducted, whoever took her might have kept these personal belongings. Her abductor could have kept any photographs she had or any other personal documents. Also, the police did not find the key and auto entry pad for her vehicle in her car, so her abductor could have had that as well. The police did not find her cell phone in the car either. Dru's boyfriend received a second call from her cell phone at approximately 7:42 p.m., but there was only static and tones on the other end. This indicates a fair probability that whoever abducted Dru also had her cell phone. Defendant complains that the warrant did not specifically state that the cell phone had to belong to Dru. However, unless the cell phone was operational at the time police performed the search, it would be almost impossible to identify the owner of the cell phone. The warrant could not more precisely describe the cell phone at that time. Horn, 187 F.3d at 788.

Next Defendant objects to the category seeking indicia of ownership or occupancy of the premises. This category was necessary to determine whether the suspect actually lived in the house being searched and whether he owned or drove the car being searched. The description of the evidence sought is not overly broad. See Horn, 187 F.3d at 788 (holding that the words "[r]ecords, documents, receipts, keys, or other objects showing access to, and control of, the residence" were not overly broad).

Finally, Defendant objects to the warrant including permission to look for telephone bills or records, bindings or ropes, and credit card receipts or bills. The telephone bills could demonstrate some connection between Dru and Rodriguez, the bindings or ropes are often used in abductions, and the credit card receipts or bills could provide more information on where Rodriguez was when Dru disappeared. The categories of evidence sought by the search warrant relate to the facts in the affidavit and the attachments to the affidavit, and the categories of evidence are described with reasonable particularity.

## DECISION

Defendant's Motions to Suppress are **DENIED**.

**IT IS SO ORDERED**.

Dated this 23rd day of March, 2006.

*Ralph R. Erickson*
Ralph R. Erickson, District Judge
United States District Court