IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER ON INTERVENOR'S** |
| Plaintiff, | ) | **MOTIONS** |
| | ) | |
| vs. | ) | Criminal File No. 2:04-cr-55 |
| | ) | |
| Alfonso Rodriguez, Jr., | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the Forum Communications Company's Motion to Vacate the Protective Order on Extrajudicial Comments and its Motion to Unseal all Documents. The Court held a hearing on June 14, 2006.

The First Amendment right of public access to court proceedings and court documents is not absolute. In re Search Warrant, 855 F.2d 569, 574 (8th Cir. 1988). A court may restrict access when it is necessary to protect a compelling government interest. Id. The right to a fair trial by impartial jurors is a compelling government interest. Gentile v. State Bar of Nev., 501 U.S. 1030, 1075 (1991). To protect this interest, the trial judge has an affirmative duty to minimize the effects of prejudicial pretrial publicity. Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 378 (1979). The Eighth Circuit has refused to adopt a strong presumption in favor of public access to court documents. United States v. McDougal, 103 F.3d 651, 657 (8th Cir. 1996) (citing United States v. Webbe, 791 F.3d 103, 106 (8th Cir. 1986)). When considering a request from the press for access to judicial documents, "courts should avoid becoming the instrumentalities of commercial or other private pursuits." Id. at 658.

1

**I. Sealed Documents**

If a court decides to seal certain documents, it must explain why sealing was necessary and why less restrictive alternatives were not appropriate. In re Search Warrant, 855 F.2d at 574. A district court's findings must be specific enough for an appellate court to determine whether the decision to seal was proper. Id. To protect the right to a fair trial by impartial jurors, a court may seal documents that contain sensitive and inflammatory information, especially when that information would not have been introduced at the preliminary hearing. State v. Archuleta, 857 P.2d 234, 239 (Utah 1993). A court may also seal documents that contain material testimony that will be used at a criminal trial. McDougal, 103 F.3d at 658.

With these constitutional standards in mind, the Court finds that the following documents, identified by docket number, do not have to be sealed: 181, 182, 187 through 196, 202, 205, 207 through 209,[1] 211, 217, 219, 221, 222, 267, 342, 344, 351, 352, 361 through 364, 366, 371, 372, 373, 375, 377, 378, 379, 382, 394, 396, 406, 413, and 415. All of these documents contain either legal arguments based on case law or a discussion of facts that are already in the public domain. Therefore these documents will be unsealed.

In addition, the documents at docket numbers 4, 5, and 6 may now be unsealed. These documents relate to the sealing of this case when the indictment was first filed. A court may seal documents when an ongoing investigation may be jeopardized. United States v. Cojab, 996 F.2d 1404, 1408 (8th Cir. 1993). At the time these documents were filed, the decision to seal was appropriate. Id. However, the defendant is now in federal custody, and there is no risk to the ongoing investigation. Therefore, it is no longer necessary to keep these documents sealed.

---

[1] In its brief, Forum Communications requested that the document at docket number 206 be unsealed, but that document was never under seal.

The brief at docket number 335 is Defendant's response to the United States' proposed introductory statement to the jury questionnaire. It was necessary to keep this document under seal to ensure that prospective jurors did not get a preview of the questionnaire. All the prospective jurors have now taken the questionnaire, so it is no longer necessary to keep this brief under seal.

The documents at docket numbers 36 and 47 contain sensitive and inflammatory information about a piece of evidence found on Ms. Sjodin's body. This information has not yet been placed in the public domain. In addition, this information would not be necessary for a preliminary hearing. Therefore, these documents will remain sealed.

The documents at docket numbers 170, 185, 186, 203, 210, 346, 349, 350, 358, 365, 381, 395, and 405 all contain information regarding the crime that law enforcement uncovered once they found Ms. Sjodin's body. This information has not yet been placed in the public domain and is of a sensitive and inflammatory nature. None of this information would be necessary for a preliminary hearing. These documents will also remain under seal.

The document at docket number 269 is a transcript of a portion of grand jury proceedings. Grand jury proceedings are entitled to secrecy. See United States v. Procter & Gamble Co., 356 U.S. 677, 681-82 (1958) (stating some of the reasons for this policy). This document will remain sealed.

The documents at docket numbers 331, 334, 345, 392, and 393 and the attachments to docket number 354 contain both facts of a sensitive and inflammatory nature regarding details of the crime discussed earlier and material testimony that will be given at the trial. These documents will remain sealed.

The attachment to document number 389 is the autopsy photos. These photos are sensitive

and inflammatory in nature, so they will remain sealed.

The documents at docket numbers 390 and 391 contain quotes from the family and friends of Ms. Sjodin. These quotes relate to how this crime has impacted their lives, so they are of a sensitive and inflammatory nature. In addition, this testimony is likely to be material testimony if there is a penalty phase to this trial. These documents will remain sealed.

The order at document number 356 has since been vacated, so it no longer has any legal relevance. This order contains the names of people who are not involved in this case, and to protect their privacy, the Court will keep this document under seal.

There are four documents that, in and of themselves, do not contain sensitive information, but they are companions to documents that do contain sensitive information or that contain potential trial testimony. If these four documents were unsealed, and the media were to report solely on the information contained within them, it would present an incomplete and possibly prejudicial version of the motions. The other party would be unable to respond to the allegations because their response would remain under seal. Therefore, the Court will keep the documents at docket numbers 183, 184, and 218 under seal because they are the companion documents to docket 210, and it will keep docket 220 under seal because it is the companion to docket 203.

The documents at docket numbers 388, 389, 397, 398, 409, 410, 417, 428, 429, and 431 all relate to the exclusion or suppression of evidence. Since the Court has yet to rule on these motions, there is a potential that these documents will reveal inadmissible evidence. The public is not entitled to access to inadmissible evidence. United States v. McVeigh, 119 F.3d 806, 813 (10th Cir. 1997). Until the Court has ruled on these pending motions, these documents will remain under seal. Id.

Finally, the documents at docket numbers 403 and 404 are the affidavits of two of

Defendant's prior victims. These affidavits reveal details of how the sexual assaults impacted their lives, which is sensitive and inflammatory information. In addition, these individuals will likely testify if there is a penalty phase to this trial, so these documents will remain sealed.

With the documents discussed above that will remain sealed, the Court's concern is with protecting the compelling interest of a fair trial by impartial jurors. There is no less restrictive alternative available because the purpose is to keep this information from the prospective jurors before trial, and unsealing these documents would reveal this information. It is likely that the majority of the evidence in these sealed documents will be introduced at trial. Therefore, once a jury has been empaneled in this case, the majority of these documents can be unsealed.

**II. Protective Order**

Court-ordered restrictions on statements made by participants in the litigation are evaluated under a less stringent standard than restrictions placed on the press. United States v. Brown, 218 F.3d 415, 425 (5th Cir. 2000) (citing Gentile, 501 U.S. at 1073-74). A court may impose an appropriate order restricting statements on participants to the court proceedings if there is a "substantial likelihood" of prejudicing the court's ability to conduct a fair trial. Id. at 427. If the court identifies a substantial likelihood that extrajudicial statements of the trial participants would prejudice its ability to conduct a fair trial, it may impose a gag order as long as it is narrowly tailored and is the least restrictive means available. Id. at 428.

A court may consider as relevant to its "substantial likelihood" determination whether the unrestricted statements of the participants to the case would increase the volume of extensive publicity. Id. at 428-29. This case has had more extensive publicity than the average case in this district. If the participants were to make unrestricted statements to the press, it would increase the

volume of the publicity.

One particular incident also factors in to this "substantial likelihood" determination. On May 24, 2006, the defense filed a brief, not under seal, that accused the United States of mishandling some evidence in this case. The brief alleged that the government acted in "bad faith." This phrase has a specific, legal definition, and it was used appropriately in the brief; however, to members of the press and the public, this term could have a broader, more nefarious meaning. In addition, the brief accused the government laboratory of "intentionally destroying" evidence, and defense counsel alleged that the lab was "arrogant." The defense also alleges that the United States "flagrantly disregarded" an order of this Court. These sensational allegations were then reported and printed by various members of the local media. See, for example, Rodriguez Trial Stays in Fargo, Fargo Forum, May 26, 2006, at A8-A9.

In response to these allegations, the government made its own insinuating comments about defense counsel. For example, an attorney for the United States questioned the defense's motives with respect to their allegations and stated "I'm real pleased we did not rely on their good word alone." Id. at A9. A defense attorney responded by alleging that the government was being "disingenuous." Id.

While the Court is able to sort through this sensational language and deal with the core legal issues presented, it is concerned with the impact this type of hyperbole would have on the Court's ability to conduct a fair trial. If prospective jurors were exposed to more of these types of statements from the lawyers or people directly involved with the case, it could taint how they view the case. Therefore, there is a substantial likelihood of prejudicing the Court's ability to conduct a fair trial.

Regarding the narrowly-tailored requirement, the current order restricting statements to the

media and the public only applies to the lawyers and the participants in the case.  The first part of the order prevents them from making "extrajudicial comments."  The term "extrajudicial" means "not forming a valid part of open legal proceedings in the case."  (Order Restricting Extrajudicial Statements at 1.)  The term "comment" is defined as any statement that expresses an "opinion, attitude, or judgment."  (Id.)  Therefore, "extrajudicial comment" means any statement of opinion about the case that is not made at a hearing, during trial, or in court documents.  This order prevents the lawyers or participants from giving an opinion to the media or public about how they think a particular witness did on the stand or how that witness helped or hurt the case.  It also prevents any attacks on the character of people involved in the case.  This part of the order conforms to the restriction on extrajudicial statements described in Rule 77.3(E) of the Local Rules.

The next part of the order is not as narrow.  It prohibits the lawyers and trial participants from "disseminating information" to the media and the public.  "Disseminating information" includes "writing letters, memoranda, or other documents, [and] providing documents to the media and public . . . ."  (Order Restricting Extrajudicial Statements at 1.)  This phrase is not limited to extrajudicial comments, so it could be interpreted as broadly as preventing parties from providing copies of public court filings to the press or the public.  The presentation of factual, unembellished information about this case will not prejudice the Court's ability to conduct a fair trial.  Therefore, the Court will issue a new protective order that eliminates the restriction on "disseminating information."

Finally, the ban on extrajudicial comments is the least restrictive means available.  It is precisely the characterizations of this case by the lawyers and other participants that need to be restricted.  Based on the fact that they are working directly on this case, the media and the public

are likely to place more weight on opinions that the lawyers and other participants have about this case.

The option of sequestering the jury is not available at this time because the jury has not been selected.  Considering the serious costs to the system of sequestering a jury, it would not be a viable option even if the jury was currently empaneled.  Brown, 218 F.3d at 431.  The ban on extrajudicial comments is the least restrictive means available in this case.  Id.

**IT IS SO ORDERED**.

Dated this 29th day of June, 2006.

_____
Ralph R. Erickson, District Judge
United States District Court