IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER REGARDING ISSUES** |
| Plaintiff, | ) | **RAISED AT PRE-ELIGIBILITY** |
| | ) | **PHASE HEARING** |
| vs. | ) | |
| | ) | |
| Alfonso Rodriguez, Jr., | ) | Criminal Case No. 2:04-cr-55 |
| | ) | |
| Defendant. | ) | |

Before the Court are a number of evidentiary motions regarding the eligibility phase of the trial and a motion to dismiss the alternate jurors. The Court held a hearing on these issues on August 31, 2006.

**I. Prior Victim Hearsay Testimony**

Defendant seeks to exclude any testimony from Ms. (Seddon) Iverson and Ms. (Knudson) Volker that doctors have diagnosed them as suffering from Post Traumatic Stress Disorder (PTSD). While the Federal Rules of Evidence do not apply during the penalty phase of a capital trial, the Confrontation Clause applies to at least the eligibility phase of the trial. United States v. Jordan, 357 F. Supp. 2d 889, 903 (E.D. Va. 2005). Since the doctors who diagnosed these witnesses with PTSD will not be testifying during the eligibility phase, Defendant does not have the opportunity to confront these doctors.

The Court also has concerns about the reliability of this testimony. None of the medical records that have been discovered contain a diagnosis of PTSD for either woman. Given the passage of time, it is not surprising that some medical records could not be located, so it is likely that these diagnoses are contained in the missing records. However, without corroboration, the Court

1

questions the reliability of testimony from these victims that they were diagnosed with PTSD.

Given the Confrontation Clause issue and the reliability issue, the Court will not allow these witnesses to testify that they have been diagnosed with PTSD. This decision does not prevent them from testifying about the physical and mental symptoms that they have experienced and continue to experience.

Defendant also requested notice from the United States if it intended to elicit testimony from these witnesses beyond the testimony that they gave during the prior closed evidentiary hearing on this matter. The government agreed to provide that notice. If any new testimony is given during the eligibility phase that was not given during the prior hearing or that the government has not provided notice about, the Court will take up that matter at sidebar.

## II. Testimony on Conviction # 6192

On August 21, 2006, Defendant filed a stipulation that his conviction in case # 6192 did involve the infliction of, or attempted infliction of, serious bodily injury under 18 U.S.C. § 3592(c)(4). The government objects to being bound by this stipulation and seeks to offer the testimony of the victim, Ms. Whalen, at some point during the penalty phase of the trial.

In Old Chief v. United States, 519 U.S. 172, 191 (1997), the Supreme Court held that a trial court abuses its discretion when it allows the prosecution to present evidence on prior convictions if the defendant has stipulated to the fact of prior conviction. While Old Chief involved a felon in possession charge, the principle seems somewhat applicable in this context. As expressed during the hearing, the Court has concerns about the hypnosis angle of this conviction and the currently pending appeal in Minnesota. However, the jury also needs some of the underlying facts of that conviction in order to determine how much weight to give it if this trial continues to the selection

phase. Therefore, the Court will take judicial notice of the conviction in case # 6192 and proposes the following language:

> On June 24, 1980, the defendant, Alfonso Rodriguez, Jr., was convicted of the offense of Attempted Kidnapping and Assault in the 1st Degree in violation of Sections 609.25 and 609.17 and 609.221 of the Minnesota Statutes in a case entitled State of Minnesota v. Alfonso Rodriguez, Jr. in the 9th Judicial District Court, Polk County, Minnesota, case number 6192. During this incident, the victim was stabbed once in the left elbow area and then stabbed once in the abdominal area on her right side.

We can discuss changes to this language on Tuesday morning.

### III. Autopsy Photographs

The Court has previously ruled on the admissibility of the autopsy photographs in the context of the merits phase of the trial. When Defendant stipulated to the origin of many of the wounds on the body, these photographs lost a lot of their probative value. However, at the eligibility phase of the trial, there are new issues the jury must consider such as whether the killing was done in an "especially heinous, cruel, and depraved manner" or whether it was done "after substantial planning and premeditation." Some of these photographs might provide relevant evidence on these issues that words could not sufficiently describe.

Photograph P0995, labeled for discovery purposes, was not objected to by the defense, so that photograph is admissible. Photograph P1021 is the same as government exhibit 52-6, which was already admitted into evidence during the merits phase. Since the United States can use government exhibit 52-6 during the eligibility phase, there is no need to also admit P1021. The United States next requested photograph P0810. Instead of P0810, the Court will allow P0811 as long as P0811 is cropped below the fingers. This photograph sufficiently demonstrates the ligature around the wrists, and the decomposition is not so advanced as to outweigh the probative value of

the photograph.  If the United States wants testimony regarding how far down her arms the sweater was, it can elicit that testimony through Dr. McGee.  There is no dispute that the sweater was torn and pulled down, and words are sufficient to describe that fact.

The remaining photographs requested by the government show decomposition.  The government wants to show the nature and the extent of bruising to Ms. Sjodin's arm and face.  However, without adequate explanation from an expert, it would be very difficult to distinguish the bruises from the decomposition.  An explanation of the size, location, and coloring of the bruises is sufficient testimony on this issue.  The extent of the decomposition in these photographs would create prejudice if these photographs were shown to the jury, and, in the Court's opinion, this prejudice outweighs the probative value of these photographs.

The last two photographs requested by the government show the knife wounds to her neck and side.  The photograph of the knife wound to the side also shows decomposition.  This photograph does not show as much detail about the wound as was described by Dr. McGee during the merits phase.  Dr. McGee's testimony is more probative on the issue of this wound than the photograph. Based on the decomposition in the photograph and its relatively low probative value, the Court finds that the unfair prejudice of the photograph outweighs its probative value, and this photograph will also be excluded.

Finally, the cropped photograph of the knife wounds to her neck demonstrate the scalloped nature of the cuts.  The government alleges that this photograph demonstrates that these wounds were not superficial.  Defendant alleges that Dr. McGee's testimony about these wounds was equivocal to the extent that Dr. McGee could not state to any degree of certainty that these were deep cuts as opposed to mere flesh wounds.

Dr. McGee testified at some length about the nature and extent of the neck wounds during the merits phase. This testimony also involved Dr. McGee drawing on a sketch of a human torso, government exhibit 84, to indicate the placement and size of the slashes to the neck. If the expert testimony is equivocal on the possible extent of these injuries, the jury will not be able to make its own determination on the seriousness of the injuries based on this photograph. Even if the expert testimony was not equivocal, Dr. McGee's statements about the nature and extent of these wounds will provide more detail about them than is shown by this photograph. In the Court's opinion, the danger of creating unfair prejudice by admitting this photograph outweighs its probative value.

In summary, the United States may offer photographs P0995 and P0811, as long as it is cropped as discussed above.

### IV. Alternate Jurors

Defendant argues that now that the jury has returned a verdict of guilty in this case, the alternate jurors should be discharged. Under 18 U.S.C. § 3593(b)(1), the hearing to determine whether a sentence of death is justified must be conducted "before the jury that determined the defendant's guilt." There is a split in the circuits on the issue of whether an alternate may replace a juror at any time during the hearing to determine whether a sentence of death is justified. Compare Battle v. United States, 419 F.3d 1292, 1302 (11th Cir. 2005) (stating that a defendant is not guaranteed the right to have punishment decided by the same jury that decided guilt) and United States v. Johnson, 223 F.3d 665, 670-71 (7th Cir. 2000) (holding that an alternate juror may deliberate on the issue of punishment in a capital case penalty hearing) with United States v. Webster, 162 F.3d 308, 347 (5th Cir. 1998) (stating that the trial court must discharge the alternates after the jury retires to deliberate on the issue of guilt).

The continuing validity of Webster is now in question considering the amendment to Rule 24 of the Federal Rules of Criminal Procedure. The Webster court based its decision on the language of former Rule 24 that stated "[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict." 162 F.3d at 347. The current rule allows the court to replace a juror with an alternate even after deliberations have begun, and it does not state when the court must discharge any alternates. Fed. R. Crim. P. 24(c)(3).[1]

The FDPA provides several scenarios where the sentence determination can be made by someone other than the jury that returned the guilty verdict, including new juries that did not decide the issue of guilt. 18 U.S.C. § 3593(b)(2) & (3). Therefore, the defendant is not invested with the right to have his penalty decision made by the same jury that reached the decision on guilt. Battle, 419 F.3d at 1302. A court can replace a juror with an alternate during the penalty phase, and the newly reconstituted jury does not have to deliberate again on the issue of guilt before reaching a decision on the penalty. Id. Therefore, the Court will retain the alternates through the eligibility phase and any possible selection phase of the trial.

**IT IS SO ORDERED**.

Dated this 1st day of September, 2006.

    /s/ Ralph R. Erickson
Ralph R. Erickson, District Judge
United States District Court

---

[1] "The court may retain alternate jurors after the jury retires to deliberate. The court must ensure that a retained alternate does not discuss the case with anyone until that alternate juror replaces a juror or is discharged. If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to being its deliberations anew." Fed. R. Crim. P. 24(c)(3).