**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| **Plaintiff/Respondent,** | : |
| | : Criminal Case No. 2:04-cr-55 |
| **vs.** | : |
| | : |
| **ALFONSO RODRIGUEZ, JR.,** | : |
| | : |
| **Defendant/Petitioner.** | : |

**PETITIONER'S RESPONSE IN OPPOSITION TO GOVERNMENT'S
"MOTION TO EXCLUDE PREVIOUSLY UNDISCLOSED EXPERTS"**

Since at least April 16, 2018, the government has known that Petitioner

intends to call two additional mental health experts at the upcoming evidentiary

hearing. *See* ECF Doc. 1074 (Clerk's Minutes of Status Conference), filed as Ex. 1

(under seal). The government now moves to exclude toxin-exposure expert Andres

Lugo, M.D., and intellectual disability witness Ricardo Weinstein, Ph.D. It argues

that the hearing "may" be delayed because opposing counsel will not have received

either witness's report until two months beforehand, and also that neither witness

will provide testimony that the government considers necessary for Petitioner's

claims. These concerns do not remotely justify the drastic remedy of striking

Petitioner's key witnesses, and the pending motion should be denied.

"Exclusion of evidence is a harsh penalty, and should be used sparingly."

*ELCA Enterprises v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 190 (8th Cir.

1995). That principle comes from ordinary civil litigation, but it applies with even

greater force when the ultimate punishment is at stake. "Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two." *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). "Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Id.*

At the outset, it is unclear whether criminal or civil rules govern this aspect of the proceeding. Rule 12 Governing Section 2255 Cases provides that the Federal Rules of Criminal Procedure and the Federal Rules of Civil Procedure "may be applied" if they are not "inconsistent with any statutory provisions or these rules." Nevertheless, a similar analysis controls the dispute under both possibilities. Expert disclosures in criminal cases are governed by Fed. R. Crim. P. 16. The remedy for an untimely disclosure depends on the reasons for the party's delay, whether the party acted intentionally or in bad faith, and the degree of prejudice to the opponent. *United States v. Davis*, 244 F.3d 666, 670 (8th Cir. 2001). A court should use the least severe sanction which will adequately punish the party and secure future compliance. *United States v. DeCoteau*, 186 F.3d 1008, 1010 (8th Cir. 1999); *see also* "Order Granting Motion for Sanctions," (ECF Doc. 343) at 2.

Civil cases similarly disfavor the outright exclusion of testimony. Even when a party fails to comply with a court-ordered disclosure deadline, it is improper to exclude expert evidence when "the party's failure to comply is

substantially justified or harmless." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). The appropriate remedy depends on "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id.*

All of the relevant factors counsel against excluding Petitioner's experts, and in any event, the government does not identify any rule or order that Petitioner has violated.

**I.    The government has not been unfairly surprised.**

The government cannot be surprised that Petitioner seeks to present new expert witnesses on toxin exposure and intellectual disability. Counsel for Petitioner explained during the status conference of April 16, 2018, that we intended to call two additional mental health experts. *See* Ex. 1 (sealed) at 1. Aside from the status conference, undersigned counsel have otherwise explained to opposing counsel the subject areas of the two witnesses – including our need for an intellectual disability expert to account for intervening legal authority, which is an issue that the government tries to preempt in its motion. *See* Motion at 3-4. Despite knowing that Petitioner intended to call additional experts, opposing counsel have never requested that expert reports be provided at any particular time before the hearing. It was not until the pending motion that the government raised any issue of timeliness, and even then, it came in the form of a motion to exclude the experts

altogether.

Moreover, the parties' practice over the years suggests that the two-month time frame at issue here is altogether reasonable. Defense psychologist Dr. Marilyn Hutchinson, for example, issued her trial report on August 6, 2006, while the trial of this case was ongoing. *See* Ex. 2 (Hutchinson report). Dr. Hutchinson testified some five weeks later, on September 13, 2006. Trial Tr. 7944. Similarly, the government's chief mental health expert, Dr. Steven Pitt, signed his report on August 24, 2006, and testified on September 19, 2006. *See* Ex. 3 (Pitt report); Trial Tr. 8472.

Petitioner has not unreasonably delayed the completion of expert reports. The government speculates that neither expert has even examined Petitioner, Motion at 2, but in fact both of them have done so. Dr. Lugo evaluated Petitioner on September 25, and Dr. Weinstein did so on August 9. Both experts are interviewing additional witnesses, traveling throughout the country in order to investigate Petitioner's social history, and gathering and reviewing relevant documents – all necessary tasks for the completion of their findings, and all requiring the ongoing and hands-on assistance of Petitioner's litigation team. We are proceeding as promptly as we can.

The government appears to be concerned about the state of counsel's progress. In that event, the proper step is to consult with us instead of moving for a severe sanction based on the possibility that the hearing "may" be delayed. *See*

Local Civil Rule 37.1(A) ("The parties may not file a discovery motion (e.g., a motion to compel discovery, motion for sanctions, or motion for protective order) until the parties have conferred, either in person or by telephone, for the purpose of making a reasonable, good faith effort to resolve the dispute without involving the court.").

### II.    Petitioner has not violated any disclosure deadline.

The government complains of the "untimeliness" of the expert disclosures, Motion at 4, but without explaining what the established disclosure deadline is. In fact, the parties have actively and cordially engaged in informal discovery since current counsel entered the case in April 2016. At no point has either party asked the Court for a scheduling order or other directive governing expert disclosures. No such order exists, and neither is there any provision of law requiring a prisoner on post-conviction review to disclose an expert report at any particular time before an evidentiary hearing.

Petitioner's forthcoming expert reports cannot be untimely: the disclosure by the end of November does not violate any court rule, any court order, or any established or agreed-upon practice of the litigants. Petitioner is at least "substantially justified" in believing it proper to disclose expert reports two months before the hearing – *Wegener*, 527 F.3d at 692 – a pledge we made in a good faith attempt to accommodate opposing counsel, for whom we identified the two experts by name when we became reasonably certain that we would offer their testimony.

5

### III.   The government's claim of delay is unsupported and premature.

The government does not elaborate on its concern that the hearing "may" be delayed. Motion at 2-3. It argues that Petitioner's plan to disclose the reports by month's end "is unworkable given the Court's pending evidentiary hearing date and the numerous other experts the parties must depose prior to the hearing date." *Id.* at 3. Petitioner's counsel do not share the government's pessimism, and indeed, the government does not explain why it cannot prepare for two additional experts if given two months in which to do so, let alone why it did not raise the concern until now despite several months' notice that Petitioner intended to call two additional mental health experts. At the very least, the attorneys should consult with each other in order to resolve any difficulties, and presumably, the parties will agree to measures that preserve the current hearing date without excluding any witnesses. The government's claim of delay is as premature as it is self-inflicted.

### IV.   Dr. Weinstein and Dr. Lugo are essential to Petitioner's claims.

The government argues that the two experts are not "necessary to support any evidentiary element" of Petitioner's claims. Motion at 3. This problematic contention misapprehends the adversarial system, in which the litigant determines the witnesses and evidence that best support the party's claim. "[O]ur adversarial system depends on opposing parties offering evidence that will strengthen their respective positions and damage that of their opponents." *United States v. Mohr*, 318 F.3d 613, 619 (4th Cir. 2003). The government is free to contest Petitioner's

witnesses, but not to select them.

Neither is there merit in the apparent suggestion that Petitioner should rest on the evidence and witnesses described in the 2255 motion from seven years ago, which was developed by previous counsel. Motion at 3-4. As attorneys of record in a death penalty case, it is incumbent upon current counsel to develop and present Petitioner's claims as best we can, and to conduct the same full-fledged investigation required of our predecessors. "Counsel at every stage have an obligation to conduct thorough *and independent* investigations relating to the issues of both guilt and penalty." American Bar Association, *Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases* § 10.7(A) (2003) (emphasis added). We must "present the claim as forcefully as possible, tailoring the presentation to the particular facts and circumstances in the client's case," while bearing in mind the advantages of "supplementing claims previously made with additional factual or legal information." *Id.* §§ 10.8(B)-(C). The addition of two experts reflects counsel's duty to exercise independent professional judgment rather than idly "vouching" for a claim developed years ago by others.

For that matter, Dr. Weinstein and Dr. Lugo are crucial witnesses for reasons specific to each expert:

### A.    Dr. Weinstein

Counsel anticipate that Dr. Weinstein will diagnose Petitioner as intellectually disabled. Three issues underlie a finding of intellectual disability: (1)

deficits in intellectual functioning/subaverage intellectual functioning, (2) deficits in adaptive functioning, and (3) onset before age 18. *Atkins v. Virginia*, 536 U.S. 304, 308 n.3 (2002); APA, *Diagnostic and Statistical Manual of Mental Disorders – 5th Edition ("DSM-5")* at 33; *Intellectual Disability: Definition, Classification, and Systems of Supports* – 11th Edition, American Association on Intellectual and Developmental Disabilities (2010) ("AAIDD-2010") at 5.

Deficient intellectual functioning is defined as an IQ of approximately 70 with a confidence interval derived from the standard error of measurement taken into consideration, which means that an IQ score of 65-75 satisfies the criterion. *See* DSM-5 at 37; *Hall v. Florida*, 572 U.S. 701, 712-24 (2014); *Brumfield v. Cain*, 135 S. Ct. 2269, 2278 (2015). IQ scores "are approximations of conceptual functioning but may be insufficient to assess reasoning in real-life situations and mastery of practical tasks." DSM-5 at 37. A diagnosis of intellectual disability must therefore reflect "a clinical judgment rather than an actuarial determination." AAIDD-2010 at 40. Even though it is imprecise, an IQ score is a helpful aspect of a diagnosis. *See Hall*, 572 U.S. at 723. Dr. Weinstein is expected to testify that he administered the WAIS-IV to Petitioner and obtained a full-scale IQ score of 74, which is consistent with school-administered scores reported from Petitioner's childhood. The government wishes for Petitioner to rely on the findings of Dr. Stephen Greenspan, who was retained by predecessor counsel instead of current counsel. Motion at 3-4. Nevertheless, as the government has pointed out, Dr.

Greenspan "did not examine Rodriguez or have him examined or tested." *See* United States' "Answer in Opposition to motion under 28 U.S.C. § 2255 for Collateral Relief, to Vacate, Set Aside, or Correct Sentence, and for a New Trial," (ECF Doc. 879) at 227. That is precisely what Dr. Weinstein has done.

Adaptive deficits are demonstrated if there is a significant limitation in any one of the following three types of adaptive behavior: (i) conceptual (functional academics, language, reading and writing, money concepts, and self-direction), (ii) social (including such characteristics as interpersonal responsibility, self-esteem, gullibility, naivete, following rules, obeying laws, and avoiding victimization), or (iii) practical (activities of daily living, instrumental activities of daily living, occupational skills, use of money, and maintaining safe environments), or (iv) in the composite of the individual's adaptive functioning. AAIDD-2010 at 43-44; DSM-5 at 37. As of this writing, Dr. Weinstein is assessing Petitioner's adaptive functioning as well as the presence of recognized "Risk Factors for Intellectual Disability." *See* AAIDD-2010 at 60 (Table 6.1).

Dr. Weinstein's analysis of adaptive functioning is important for numerous reasons. First, as the government observes in its responsive pleading, Dr. Greenspan ultimately issued no opinion on adaptive deficits. *See* ECF Doc. 879 at 254. Following his declaration of 2011, Dr. Greenspan "subsequently met with Rodriguez, and then filed a supplemental declaration on February 25, 2013 in which he conceded that it was 'impossible to meaningfully assess his current

adaptive functioning' because of almost forty years of continuous incarceration."
*Id.* Dr. Weinstein will present the requisite proof of Petitioner's impairments.

Second, intervening legal authority independently justifies the use of a separate expert. Since the time that Petitioner's 2255 motion was filed, the Supreme Court has clarified the standards for measuring adaptive functioning in *Atkins* litigation. Because an intellectually disabled person need only manifest adaptive deficits in a limited number of specified areas, the Court has explained that adaptive strengths may exist alongside adaptive deficits and do not defeat a claim of intellectual disability. *See Moore v. Texas*, 137 S. Ct. 1039, 1050 (2017). The Court specifically discouraged reliance on adaptive strengths "developed in a controlled setting, *as a prison surely is*." *Id.* (emphasis added). That principle is especially relevant to Petitioner's claim. The government's experts, after all, detail a broad assemblage of Petitioner's perceived adaptive strengths, most of which involve prison life and ignore Petitioner's limited functioning in the absence of a highly-structured environment. *See* ECF Doc. 879 at 255-308 (summarizing findings of Dr. Michael Welner and Dr. James Seward). Dr. Weinstein's findings will be essential for supporting Petitioner's claim and rebutting the government's experts.

### B.    Dr. Lugo

The government argues that any report or testimony from Dr. Lugo would be "procedurally barred" because toxin exposure is not mentioned in Petitioner's

motion for collateral relief, which Petitioner has not sought to amend. Motion at 4.

The government is wrong. Petitioner's pleading under 28 U.S.C. § 2255 specifies

that counsel rendered deficient performance with respect to toxin expert Dr.

Donald Ecobichon in numerous respects, as set forth below:

> The centerpiece of the defense case in mitigation was the testimony of three experts. A toxicologist testified about exposure to toxins in pesticides. A neuropsychologist opined about the results of several psychological tests she had administered to Mr. Rodriguez. And a psychologist diagnosed Mr. Rodriguez as suffering from inter alia, "low grade long-term depression" and post-traumatic stress disorder, among other things. Each, however, was hobbled by trial counsel's deficient performance.
>
> ***The toxicologist, Dr. Donald Echobichon [sic.]), never examined Mr. Rodriguez. He testified generally about the effect of exposure to pesticides, but readily acknowledged that he had no idea whether Mr. Rodriguez had been so exposed***. At the same time, he acknowledged that, because North Dakota is an agricultural area, it was quite probable that "tens of thousands of people" in the region have been exposed to the same pesticides. ***Dr. Echobichon also had nothing to say about any possible connection between exposure to these pesticides and "someone's propensity for violent crime." Finally, because he reviewed no records associated with Mr. Rodriguez, reviewed none of the work undertaken by others on the defense team, and conducted no investigation of his own, he could not say whether anything in Mr. Rodriguez's physical, medical, or psychological profile had the remotest connection to any possible exposure to pesticides***.
>
> In closing arguments, the government made short work of Dr. Echobichon's testimony, pointing out that he had no idea whether Mr. Rodriguez had in fact been exposed to toxins or in what dosage, and no idea what effect this exposure may have had on Mr. Rodriguez's behavior. Not surprisingly, on the verdict form, no jurors found that Mr. Rodriguez "suffers from the effects of his exposure to toxins."

Petitioner's "Motion for Collateral Relief, to Vacate, Set Aside and Correct

Sentence, and for New Trial," (ECF Doc. 752)), at 84-86 (emphases added; footnotes omitted).

Petitioner thus alleges that trial counsel failed to arrange for Dr. Ecobichon to examine Petitioner, that Dr. Ecobichon failed to review relevant records, and that Dr. Ecobichon's resulting conclusions were justly attacked by the prosecution as conjectural. *Id.* That is why Petitioner intends to present the findings of a more informed toxin-exposure expert. That expert cannot be Dr. Ecobichon himself, because he is recently deceased. *See In Memoriam: Donald John Ecobichon*, available at <<https://toxchange.toxicology.org/p/bl/et/blogaid=2475>>. The findings of Dr. Lugo will be critical to Petitioner's claim. His role as a post-conviction witness is entirely appropriate.

Also without merit is the government's argument that the claim is barred as previously litigated. *See* Motion at 4. It is true that the trial jury rejected the defense claim of toxin exposure, *id.*, but that fact only supports Petitioner's claim that defense counsel presented an ill-informed expert and thereby rendered ineffective assistance. The mere fact that the defense litigated an issue does not preclude a post-conviction claim that the defense litigated it ineffectively based on facts beyond the trial record. *See*, *e.g.*, *United States v. Gonzalez*, 98 Fed. App'x 825, 828-29 (10th Cir. 2004) (prisoner could attack validity of guilty plea under claim of ineffective assistance of counsel based on extra-record evidence of trial counsel's erroneous legal advice, despite direct appeal ruling that plea was

voluntary); *see also* Proposed Reply Brief on Forensic Claims (ECF Doc. 1097), at 8-11, 26-28, and authorities cited.

WHEREFORE, for all of the foregoing reasons, Petitioner respectfully requests that the Court deny the pending "Motion to Exclude Previously Undisclosed Experts."

Respectfully submitted,


/s/ Joseph W. Luby
VICTOR J. ABREU
JOSEPH W. LUBY
ERIC J. MONTROY
JAHAAN SHAHEED
FEDERAL COMMUNITY DEFENDER
FOR THE EASTERN DISTRICT OF
PENNSYLVANIA
Capital Habeas Unit
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520


Dated:    November 8, 2018
          Philadelphia, PA

13

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2018, the foregoing document was filed

electronically with the Clerk of Court through ECF, and that ECF will send a

Notice of Electronic Filing to the following:

Keith Reisenauer
keith.reisenauer@usdoj.gov

Melissa H. Burkland
melissa.burkland@usdoj.gov

/s/ Joseph W. Luby
*Counsel for Defendant-Petitioner*