IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
|     Plaintiff/Respondent, | : |
| | : Criminal Case No. 2:04-cr-55 |
| vs. | : Civil Case No. 2:11-cv-88 |
| | : |
| ALFONSO RODRIGUEZ, JR., | : |
| | : |
|     Defendant/Petitioner. | : |

**REPLY IN SUPPORT OF PETITIONER'S MOTION TO ALTER OR
AMEND JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e)**

The Court denied Petitioner's *Atkins* claim because it could not "rule out" various mental illnesses and traumas as contributing factors to his intellectual and adaptive deficits. Doc. #1149, p. 7, 141. The government disputes Petitioner's intellectual and adaptive deficits at some length, but it does not argue that the Court erred by finding them. It does not dispute that prevailing clinical and legal standards focus on the deficits themselves instead of their causes – or even that Petitioner need not "rule out" the very factors relied upon by the Court. And it provides no good reason for the Court to ignore the newly-issued clinical standard that qualifying impairments may manifest at any time before an individual's twenty-second birthday. The Court must at least assess Petitioner's claim under accepted clinical standards. Indeed, the Supreme Court's jurisprudence "strongly suggests that the legal standard for intellectual disability in *Atkins* cases has

1

become more protective than the clinical standard." *Jackson v. Payne*, 9 F.4th 646, 655 (8th Cir. 2021) ("*Jackson IV*") (mandate issued Oct. 28, 2021).

### A.    The Court's departure from clinical standards is a manifest error of law that justifies relief under Rule 59(e).

Despite conflicting evidence of Petitioner's intellectual disability, the Court observed that it would have "little difficulty" finding qualifying intellectual and adaptive deficits. Doc. #1149, p. 157. Nevertheless, the Court explained that "a finding of significant cognitive and adaptive functioning deficits is not enough under Supreme Court precedent," that the deficits must manifest before the age of eighteen, and that the Court cannot "rule out" other factors that "may be contributing" to Petitioner's deficits and that "may have arisen" after he turned eighteen. *Id.* at 7, 141, 158, 162. The "contributing" factors relied on by the Court are brain trauma, toxin exposure, alcoholism and chemical dependency, a family history of dementia, and obsessive-compulsive symptoms. *Id.* at 7, 141, 162.

Petitioner's Rule 59(e) motion explained that the Court's reliance on these factors departs from clinical standards and violates binding authority. Supreme Court precedent recognizes other mental illnesses as "'risk factors,' causing clinicians to further explore the possibility of intellectual disability rather than 'counter[ing] the case for a disability determination.'" *Jackson v. Kelley*, 898 F.3d 859, 865 (8th Cir. 2018) ("*Jackson III*") (quoting *Moore v. Texas*, 137 S. Ct. 1039, 1051 (2017) ("*Moore I*")). Petitioner need not "rule out other contributing causes"

2

of his deficits. *Jackson III*, 898 F.3d at 868.

The Court's "rule out" requirement is a "manifest error" that reflects "a failure to recognize controlling precedent." Gov't Resp. at 3 (quoting *Burritt v. Ditlefsen*, 807 F.3d 239, 252-53 (7th Cir. 2015), and other authorities); *Walker v. McCaughtry*, 72 F. Supp. 2d 1025, 1035 (E.D. Wisc. 1999). That precedent makes it impermissible for a court to "depart[] from clinical practice" by treating risk factors of intellectual disability as evidence that a person is not intellectually disabled. *Moore I*, 137 S. Ct. at 1051; *Moore v. Texas*, 139 S. Ct. 666, 671 (2019) ("*Moore II*"); *Jackson III*, 898 F.3d at 865, 868.

The government offers no substantial argument to the contrary. The bulk of its response rehashes the government's earlier arguments on prongs one and two, including the conflicting testing data, Dr. Weinstein's scoring methodology, and differing accounts of Petitioner's real-world abilities. Gov't Resp. at 4-10, 12-13. But the Court did not rely on these points in rejecting the *Atkins* claim. While the Court found the evidence to be "close" and conflicting on prongs one and two, Doc. #1149, p. 140-41, 162, it nevertheless reasoned that Petitioner was sufficiently impaired to satisfy both prongs one and two but did not prove that the impairments were manifest before age eighteen. *Id.* at 7, 141, 157-58, 162. Such proof was lacking, the Court explained, because the evidence did not "rule out" other factors as explanations for Petitioner's deficits. *Id.* at 7, 141. The government

insists that the Court "did not require that any mental health condition or other factor be 'ruled out' for Petitioner to prove he was intellectually disabled." Gov't Resp. at 11. Yet the Court expressly relied on such a requirement multiple times.[1]

It makes no difference whether the Court committed the identical error found in *Jackson III*. *See* Gov't Resp. at 10. The broader holding in *Jackson III* is that a court must be guided by the diagnostic standards of the "medical community." *Jackson III*, 898 F.3d at 864-65; *Jackson IV*, 9 F.4th at 652-53. In reaching that holding, the Eighth Circuit quoted the Supreme Court's rulings in both *Moore* cases. *See Jackson IV*, 9 F.4th at 652-53. The first of the *Moore* rulings held that the state court had wrongly "departed from clinical practice" by treating a person's mental health issues as evidence that he is not intellectually disabled. *Moore I*, 137 S. Ct. at 1051; *Jackson IV*, 9 F.4th at 652-53. The second *Moore* ruling clarified that the state court had wrongly required the prisoner to prove that his problems in school "stemmed from his intellectual disability, rather than emotional problems." *Moore II*, 139 S. Ct. at 671; *Jackson IV*, 9 F.4th at 653. This Court's "rule out" requirement squarely conflicts with binding authority.

---

[1] *See* Doc. #1149, p. 7 ("[O]n this record, evidence of Rodriguez intellectual and adaptive deficits prior to age 18 is equivocal. The Court cannot rule out other factors that may be contributing to Rodriguez's below average cognitive functioning that is evident today, to name a few: Rodriguez's history of alcoholism; his family history of dementia; and his brain trauma."); *id.* at 141 ("[T]he Court cannot rule out other factors that may be contributing to Rodriguez's below average cognitive functioning that is evident today—and these factors may have arisen after he reached 18. To name a few: Rodriguez's history of alcoholism; his family history of dementia; and his brain trauma."); *id.* at 158 ("[T]here are several possible explanations for Rodriguez's poor academic performance and low IQ scores during the relevant developmental period.").

It does not avail the government to cite Dr. Welner's testimony or the Court's reliance on it. *See* Gov't Resp. at 9. The Court reasoned that conditions other than intellectual disability may impair an individual's functioning, but that such other conditions and their resulting impairments "are not part of intellectual disability." Doc. #1149, p. 162; Hrg. Tr. 1669. The Court thereby rejected the *Atkins* claim: it reasoned that toxin exposure, substance abuse, obsessive-compulsive tendencies, and other circumstances "may be affecting Rodriguez's functioning" and are extrinsic to intellectual disability. Doc. #1149, p. 162.

Even a factual finding is reversible error when "it is based on an erroneous view of the law." *Wright v. St. Vincent Health Syst.*, 730 F.3d 732, 737 (8th Cir. 2013). In this instance, Dr. Welner's contra-diagnostic testimony does not allow the Court to depart from established clinical standards that are set forth in binding precedent. The medical community recognizes that mental health issues and developmental trauma are "risk factors" for intellectual disability and are not evidence "that a person does not also have intellectual disability." *Moore I*, 137 S. Ct. at 1051. The *cause* of a person's deficits makes no difference. *See* American Psychiatric Ass'n, *DSM-V* 39 (2013) ("The diagnosis of intellectual disability should be made whenever Criteria A, B, and C are met."); *DSM-IV-Tr* 47 (2000) ("[T]he diagnosis should be made whenever the diagnostic criteria are met, regardless of and in addition to the presence of another disorder.").

5

**B.    The Court should consider the medical community's extension of the age of onset to the individual's twenty-second birthday.**

The Court based its ruling on mental health issues and traumas that "may have arisen" after Petitioner turned eighteen. Doc. #1149, p. 141. The government is simply incorrect in arguing that "the change from eighteen to twenty-two has no effect on the Court's analysis." Gov't Resp. at 14. The difference is critical for a number of the factors analyzed by the Court. Petitioner's access to drugs and alcohol, for example, abruptly diminished when he entered prison at the age of twenty-one. Hrg. Tr. 498, 1518. The last head injury for which Petitioner sought medical treatment occurred at the age of seventeen or eighteen. Pet. Ex. 74 at 22 (per Dr. Silva); Doc. #1151-5 at 45-46. And Petitioner was exposed to neurotoxic pesticides during his work at the American Crystal Sugar Plant at the age of nineteen and twenty – and to lead-glazed pottery when he used his family's cooking utensils and dinnerware before his lengthy incarceration. Hrg. Tr. 102-03, 791, 807-12, 1145, 1551; Pet. Ex. Pet. Ex. 68 at 12 (per Dr. Lugo); Pet. Ex. 29 at 2.

Neither was it improper for Petitioner to invoke the new standard after the Court's order and judgment. The government complains that the AAIDD issued its manual one week after Petitioner's reply brief. Gov't Resp. at 17. Prior to the Court's ruling, however, Petitioner had no notice that the new age of onset made any difference. The government never argued the principle on which the Court denied the *Atkins* claim, i.e., that Petitioner's intellectual and adaptive impairments

might be explained by purportedly extrinsic circumstances that may have arisen after his eighteenth birthday. *See* Doc. #1144 (government's post-hearing brief), p. 18-19, 50-90. The Court explained that it had departed from the parties' arguments. *See* Doc. #1149, p. 6 ("[A]lthough the briefing has been voluminous, the Court has not been swayed by either parties' arguments."). That is of course the Court's prerogative, but it is proper for Petitioner to seek reconsideration on matters that the parties did not squarely address. *See, e.g., Luig v. North Bay Enterprises*, 817 F.3d 901, 906-07 (5th Cir. 2016) (argument permissible on Rule 59(e) motion in order to address issue raised *sua sponte* on summary judgment).

In any event, the Court has not entered a *final* judgment. A grant of post-conviction relief under 28 U.S.C. § 2255 is not final and appealable until the prisoner has been re-sentenced, *Wiggins v. United States*, 900 F.3d 618, 621 (8th Cir. 2018), and the Court has the inherent authority to reconsider any non-final order. *K.C. 1986 Ltd. Partnership v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007). Petitioner faces the prospect of a penalty phase retrial, and with it, the jury's consideration of a sentence for which Petitioner is constitutionally and statutorily ineligible. *See Atkins v. Virginia*, 536 U.S. 304 (2002); 18 U.S.C. § 3596(c). It would be senseless for the Court to conduct a retrial without first assessing Petitioner's intellectual disability under current diagnostic standards. The pending motion asks for nothing more.

Respectfully submitted,


/s/ JOSEPH W. LUBY
JOSEPH W. LUBY
ERIC J. MONTROY
ANNIE FISHER
JAHAAN SHAHEED
FEDERAL COMMUNITY DEFENDER
FOR THE EASTERN DISTRICT OF
PENNSYLVANIA
Capital Habeas Unit
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
joseph_luby@fd.org
eric_montry@fd.org
annie_fisher@fd.org
jahaan_shaheed@fd.org

Dated:    November 4, 2021
          Philadelphia, PA

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2021, the foregoing document was filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

Melissa H. Burkland
melissa.burkland@usdoj.gov

/s/ Joseph W. Luby
*Counsel for Defendant-Petitioner*